# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARIA DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:24CV101 |
| v. | ) | |
| | ) | |
| KYLE CRISCO, and CVS PHARMACY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE[1]

This matter is before the Court on Defendants Kyle Crisco ("Crisco") and CVS Pharmacy, Inc.'s ("CVS") (collectively "Defendants") Motion for Summary Judgment as to All Claims in Plaintiff's Complaint. (Docket Entry 36.) Plaintiff Maria Douglas (hereinafter, "Plaintiff") has responded to the Motion. (Docket Entry 39.) Defendants have filed a reply (Docket Entry 41) and Plaintiff filed a sur-reply (Docket Entry 42). The matter is ripe for disposition. For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion.

## I.    BACKGROUND

### A. Procedural Background

Plaintiff initiated this action against Defendants in November 2023 in the Superior Court of Richmond County, North Carolina and it was subsequently removed to this Court

---

[1] By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant 28 U.S.C. § 636(c). (Docket Entry 26.)

on February 9, 2024. (*See* Docket Entry 1; *see also* Amended Complaint, Docket Entry 7.)[2] On February 15, 2024, Defendants filed an Answer to Plaintiff's Amended Complaint. (Docket Entry 9.) Discovery thereafter commenced (Docket Entry 17) and on December 20, 2024, Plaintiff voluntarily dismissed without prejudice Count VII of her Complaint, specifically the Class Action claim. (*See* Docket Entry 31; *see also* Docket Entry 34.) On January 31, 2025, Defendants filed the pending Motion for Summary Judgment to dismiss all of Plaintiff's claims with prejudice. (Docket Entry 36 at 2[3], *see also* Docket Entry 37.) Plaintiff thereafter filed a response and Defendants filed a reply. (Docket Entries 39, 41.) Plaintiff then filed a sur-reply (Docket Entry 42).

### B. Plaintiff's Amended Complaint

As alleged in her Amended Complaint, Plaintiff states that on or about August 30, 2023, and upon being notified, she went to pick up her prescription for the pain medication Nucynta at CVS located in Rockingham, North Carolina. (Am. Compl. ¶ 8.) Plaintiff's Nucynta prescription was in light of her rotator cuff surgery a few days prior. (*Id.* ¶ 11.) Plaintiff alleges that while travelling to CVS, she phoned Crisco, a pharmacist at CVS, who replied that "a prescription was not ready, and ultimately hung up the phone." (*Id.* ¶¶ 5, 9.) Plaintiff further alleges that "[p]rior to arriving to CVS, [she] received another phone call from [D]efendant, CVS Pharmacy that her prescription was ready." (*Id.* ¶ 10.)

---

[2] Plaintiff amended her Complaint prior to removal. (*See* Docket Entry 1-3.)
[3] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

After arriving at the CVS and seeking clarification on her medication, Plaintiff alleges that she was "actively ignored" by Crisco, who "was rude, disrespectful, discriminatory, and dismissive, referring to [P]laintiff as 'you people' and other epithets." (*Id.* ¶¶ 12, 13.) Crisco also "called the police on [ ] Plaintiff falsely claiming he had been assaulted by her 'husband.'" (*Id.* ¶ 14.) Plaintiff further alleges that Crisco's discriminatory acts also included erasing her prescription from the CVS pharmacy system and contacting Plaintiff's pain management medical care provider "falsely claim[ing] [that] he had been assaulted by [P]laintiff's 'husband'[,]" leading the provider to cancel its relationship with Plaintiff. (*Id.* ¶¶ 15-16.)

Plaintiff alleges that Crisco's actions were based on Plaintiff's status in a protected class, "including but not limited to a Black, disabled woman, and not based on any personal knowledge or actions of [P]laintiff directly." (*Id.* ¶ 17.) According to the Amended Complaint, Crisco's discriminatory actions on August 30, 2023, were not new, and CVS "knew or should have known about the previous discriminatory actions of [Crisco] by reason of prior complaints, internet reviews," and similar incidents in other CVS stores in North and South Carolina involving other pharmacists. (*Id.* ¶¶ 18-20.) Plaintiff alleges that because of Crisco's conduct she "was without pain medication for her surgery for more than 30 days, and without pain management." (*Id.* ¶ 21.)

Plaintiff's Amended Complaint asserts several claims against Defendants. Plaintiff brings state law claims for intentional infliction of emotional distress ("IIED"), defamation, tortious interference with a contractual relationship, abuse of process, and negligent retention and supervision. (*Id.* ¶¶ 22-26, 27-30, 31-38, 39-44, 49-53.) Plaintiff also alleges a claim under federal law for discrimination based on denial of service in light of her protected class as a

3

black woman. (*Id.* ¶¶ 45-48.) Lastly, Plaintiff alleges a class action claim, which again has been voluntarily dismissed without prejudice. (*Id.* ¶¶ 54-61; *see also* Docket Entries 31, 34.)[4] Plaintiff seeks preliminary and permanent injunctive relief, a trial by jury, and monetary damages. (Am. Compl. at 10-11.)

## II.   **DISCUSSION**

Defendants have moved for summary judgment. Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A material fact is one where its existence or non-existence could result in a different jury verdict." *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-

---

[4] Defendants now seek dismissal of this claim with prejudice. (*See* Docket Entry 37 at n.1.) In light of the Stipulation and the claim not before the Court, the undersigned denies Defendants' request.

4

moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

In support of their motion for summary judgment, Defendants have submitted a supporting brief in which they argue that "the record is entirely devoid of competent evidence to support Plaintiff's claims" as:

> the undisputed facts show Crisco could not fill Plaintiff's prescription because a prior authorization was required and had not been provided on August 30, 2023. Additionally, the facts indisputably show Crisco called law enforcement after Plaintiff's cousin, Robert Wilson ("Wilson"), who accompanied Plaintiff to the Rockingham CVS, insisted that Crisco "step outside" in a threatening manner. Following this interaction, Crisco called law enforcement per CVS protocol, noted Wilson's actions in CVS's pharmacy management system, and called Plaintiff's pain management provider to report that he was not filling Plaintiff's prescription so she could obtain the medication elsewhere.

(Docket Entry 37 at 2.)

Defendants have presented evidence in the form of a declaration on Crisco's own behalf; deposition transcript excerpts from Plaintiff and Crisco; deposition transcript excerpts

5

from Plaintiff's nurse case manager, Karen Abshire; deposition transcript excerpts from Plaintiff's cousin, Wilson; a declaration from CVS Senior Manager Adam Zimmerman; and body camera footage from the Rockingham Police Department. (*See* Deposition of Maria Douglas ("Douglas Dep."), Docket Entry 37-2; Deposition of Karen Abshire ("Abshire Dep."), Docket Entry 37-3; Deposition of Kyle Crisco ("Crisco Dep."), Docket Entry 37-4; Declaration of Kyle Crisco ("Crisco Decl."), Docket Entry 37-5; Declaration of Adam Zimmerman, Docket Entry 37-6; Deposition of Robert Wilson ("Wilson Dep."), Docket Entry 37-7; and Rockingham Police Department body camera video footage ("Video Footage"), Docket Entry 37-8.[5]) Defendants also attached several unpublished cases cited in their support brief in support of their motion. (*See* Docket Entry 37-9.)

Plaintiff filed a response in opposition to Defendants' motion for summary judgment. (Docket Entry 39.) In support of her opposition brief, Plaintiff relies on her deposition transcript, her medical records, the depositions of Nurse Abshire and Crisco, and the deposition of responding Officer Cheyenne Revels of the Rockingham Police Department. (*See* Douglas Dep., Docket Entry 39-1 at 2-126; Medical Records from Southern Rehabilitation Network, Inc., Docket Entry 39-1 at 127-141; Abshire Dep., Docket Entry 39-1 at 142-261; Medical Records from Integrated Pain Solutions, Docket Entry 39-1 at 262-274; Crisco Dep., Docket Entry 39-1 at 275-317; Deposition of Cheyenne Revels ("Revels Dep."), Docket Entry 39-1 at 318-358.)[6] In addition, Plaintiff seeks to incorporate by reference the body camera

---

[5] This video footage has been manually filed with the Court. (Docket Entry 38.)

[6] Both parties have attached, in part or all, of the deposition transcripts and exhibits related to Plaintiff, Crisco, and Nurse Abshire's deposition. For the sake of clarity, the Court will refer to the parties' designated filings when referencing pertinent parts of said depositions.

footage with Officer Cheyenne Rebels. (*See* Docket Entry 39-1 at 359.) Defendants filed a reply (Docket Entry 41) and Plaintiff filed a sur-reply (Docket Entry 42).

The undersigned has reviewed and considered Defendants' Motion, the parties' briefs, and the attached exhibits in making the following determination.

### 1. Intentional Infliction of Emotional Distress

The undersigned first concludes that Defendants are entitled to summary judgment on Plaintiff's IIED claim. Plaintiff's Amended Complaint alleges that "Crisco's actions in ignoring [P]laintiff in need of pain medication after a surgery, then calling her names and calling the police on her, falsely accusing her of assaulting him, and then calling her pain management facility to end her treatment was atrocious and egregious" and done with the intent to cause and did in fact cause Plaintiff to suffer severe emotional distress. (Am. Compl. ¶¶ 24, 26.) Defendants seek summary judgment as to Plaintiff's IIED claim, arguing that nothing Crisco did was extreme or outrageous, Plaintiff has no evidence that Crisco intended to cause her severe emotional distress, and that "Plaintiff fails to forecast any evidence that she suffered severe emotional distress." (Docket Entry 37 at 11-16.) Plaintiff counters by arguing that "[t]here are disputed facts as to whether [ ] Crisco's actions were made in good faith and reasonable" and Crisco "acted 'outside the bounds of decency'. . ., when he abruptly hung up the phone on a patient who was calling about pain medications needed after a surgery[,] [and] actively ignored [Plaintiff] as she waited for help in pain." (Docket Entry 39 at 13.) Plaintiff further argues that Crisco "should have known his actions would cause Plaintiff's Pain Management to be cancelled." (*Id.*)

"The essential elements of a claim for intentional infliction of emotional distress are '1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress.'" *Holloway v. Wachovia Bank & Tr. Co.*, 339 N.C. 338, 351, 452 S.E.2d 233, 240 (1994) (quoting *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)). Extreme and outrageous conduct is that which "shocks the conscience or exceeds all bound of decency tolerated by society" and "must be so outrageous in character, and so extreme in degree, . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *Russ v. Causey*, 732 F. Supp. 2d 589, 607 (E.D.N.C. 2010), *aff'd in part*, 468 F. App'x 267 (4th Cir. 2012) (internal quotation, citations and brackets omitted). An act that is performed with "reckless indifference to the likelihood that emotional distress may result" is sufficient to satisfy the intent requirement in intentional infliction of emotional distress. *Dickens*, 302 N.C. at 449, 376 S.E.2d at 333. However, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Johnson v. Bollinger*, 86 N.C. App. 1, 6, 356 S.E.2d 378, 382 (1987) (quotation omitted). "Whether conduct constitutes extreme and outrageous behavior is initially a question of law for the court." *Byrd v. Fat City Condo. Owners Ass'n, Inc.*, No. 3:22-CV-249-MOC-DCK, 2023 WL 8103151, at *4 (W.D.N.C. Nov. 21, 2023) (citation omitted).

Here the facts viewed in light most favorable to Plaintiff do not establish extreme and outrageous conduct or reckless indifference on the part of Crisco to sustain Plaintiff's IIED claim thus entitling Defendants to summary judgment. During her deposition, Plaintiff stated that the following actions of Crisco caused her emotional distress: (1) "[r]efusing [her] medications"; (2) Crisco "[m]aking himself feel like the victim . . . like he was the one that

needed the medicine, and not [Plaintiff]"; (3) causing a "wait period" of "[t]hirty days or more without pain medicines after surgery"; and (4) [c]alling the pain management representative and sending paperwork to her, implying that [Plaintiff] did something wrong to him, instead of him just refusing [Plaintiff's] medicines." (Douglas Dep. at 142:7-143:10, Docket Entry 37-2.) However, this conduct does not qualify as extreme and outrageous. Under the circumstance, "[w]hile these alleged acts may be in bad taste, they are, at most, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities and are not beyond all possible bounds of decency." *Byrd*, 2023 WL 8103151, at *5 (cleaned up).[7] Moreover, the evidence that Plaintiff relies upon (for example, Crisco's explanation of his prioritization approach to filing prescriptions and concerns with Schedule II[8] and Suboxone prescription patients, Officer Revels's video footage, the public reviews of CVS, and Crisco hanging up on Plaintiff) does not constitute extreme and outrageous behavior. (*See* Docket Entry 39 at 13; *see also* Crisco, Dep. at 64:20-68:2; Ex. 8 to Douglas's Dep., Docket Entry 39-1 at 121-126, Docket Entry 38.)

Beyond that, Plaintiff has not forecast evidence of mental distress of serious nature resulting from this incident. Severe emotional distress means "any emotional or mental

---

[7] Plaintiff's reliance on *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015) is unpersuasive. That Court, applying South Carolina law, dismissed a portion of the plaintiff's IIED claim against a defendant who allegedly "laughed and denied" the plaintiff's accommodation request, "became irritated, started talking in a loud, aggressive tone to him, insulted him with a racial slur, and threatened to call the police on [the p]laintiff". *Id.* at 856. The alleged actions of another individual defendant, which were much more severe, were allowed to survive the motion to dismiss. *See id.* at 830-31, 856. Here, Plaintiff's allegations are not as severe as those that survived a motion to dismiss in *Callum*, nor does the summary judgment record otherwise establish conduct on the part of Crisco which rises to the level to support Plaintiff's IIED claim.

[8] Plaintiff's Nucynta medication is "a brand-name Schedule II narcotic." (Crisco Decl. ¶ 4.)

9

disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Spivey v. Norris*, No. 7:15-CV-160-BO, 2017 WL 1184103, at *6 (E.D.N.C. Mar. 29, 2017) (quotation omitted), *aff'd,* 731 F. App'x 171 (4th Cir. 2018). Here, Plaintiff admits that she has not seen a mental health professional, nor has she been diagnosed with an emotional disorder as a result of Crisco's purported actions. (Douglas Dep. at 150:6-15; 152:1-5, Docket Entry 37-2.) "While proof of severe emotional distress does not necessarily require medical evidence or testimony, there must be real evidence of severe emotional distress." *Maisha v. Univ. of N. Carolina*, No. 1:12-CV-371, 2015 WL 277747, at *8 (M.D.N.C. Jan. 22, 2015) (internal quotations, brackets and citation omitted), *aff'd,* 641 F. App'x 246 (4th Cir. 2016). Plaintiff's trouble with sleeping and difficulties with coping with physical pain are insufficient. (*See* Douglas Dep. at 148:22-149:5, Docket Entry 39-1; *see also Maisha*, 2015 WL 277747, at *8 (anxiety and trouble sleeping does not qualify as severe emotional distress).) For these reasons and because there is no genuine issue of material fact as to Plaintiff's IIED claim, summary judgment in Defendants' favor is appropriate. *See Spivey*, 2017 WL 1184103, at *7 (summary judgment appropriate where "in response to the motion [the plaintiff] has failed to come forward with any forecast of medical evidence which would support her allegation that her emotional distress has been severe").

### 2. Defamation

The undersigned next concludes that Defendants are entitled to summary judgment on Plaintiff's defamation claim. The Amended Complaint alleges that "Crisco spoke and/or published the following false words concerning [P]laintiff: 'that he was assaulted by the

plaintiff's husband.' " (Am. Compl. ¶ 28.)   Plaintiff further alleges that such words were published while Crisco worked as an agent of CVS and Plaintiff "has been damaged" because "these words were spoken and/or published to the pain management care provider of [P]laintiff" which ended her services and delayed her receipt of medication for over 30 days. (*Id.* ¶¶ 29-30.)

   Defendants seek summary judgment as to Plaintiff's defamation claim, arguing that the central statements which the defamation claim is premised were not statements about Plaintiff and in any event, fail to defame Plaintiff.  (Docket Entry 37 at 16-17.)   Defendants further contend that even if some statements were about her, "Plaintiff has forecast no evidence of either the injurious character of Crisco's alleged words (as they relate to her) or special damages" necessary to prevail on a slander *per quod* claim.   (*Id.* at 17-18.)   Finally, Defendants contend that any statements by Crisco that Plaintiff was a "drughead" and "rude" do not support her defamation claim for lack of publication.  (*Id.* at 18.)

   Plaintiff opposes by arguing that "Crisco called the Pain Management facility and indicated he was threatened by the 'husband' of" Plaintiff despite his absence at CVS on that day.  (Docket Entry 39 at 14.)   Plaintiff further argues that Crisco was not threatened by Plaintiff's cousin Wilson, but rather Crisco's "ego was challenged[,] and he performed these actions to prove a point" by doing "exactly what [he] said [he] was going to do."  (*Id.* (quoting Crisco Dep. at 82:3-4, Docket Entry 39-1).)   In her sur-reply, Plaintiff argues that Crisco's statement that Plaintiff's "husband" threatened Crisco "directly concerned Plaintiff and led to termination of her medical care."  (Docket Entry 42 at 2.)

11

"In North Carolina, the term defamation applies to the two distinct torts of libel and slander." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002), *writ denied, review denied, appeal dismissed,* 357 N.C. 163, 580 S.E.2d 361 (2003). "Libel *per se* is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person . . .; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Id.* Slander is divided into two action classes: slander *per se* and slander *per quod.* "Slander *per se* is a statement to a third party which is (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Greensboro Scuba Sch., LLC v. Robertson*, 242 N.C. App. 383, 776 S.E.2d 363 (2015) (unpublished table decision) (citation omitted). "Slander *per quod* involves a spoken statement of which the harmful character does not appear on its face as a matter of general acceptance, but rather becomes clear 'only in consequence of extrinsic, explanatory facts showing its injurious effect[.]' " *Donovan v. Fiumara*, 114 N.C. App. 524, 527, 442 S.E.2d 572, 574 (1994) (citation omitted). For slander *per quod,* "the injurious character of the words and some special damage must be pleaded and proved." *Izydore v. Tokuta*, 242 N.C. App. 434, 445, 775 S.E.2d 341, 349 (2015) (citation omitted). For a successful "claim of defamation, 'a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation.' " *Smith-Price v. Charter Behav. Health Sys.*, 164 N.C. App. 349, 356, 595

12

S.E.2d 778, 783 (2004) (citing *Tyson v. L'Eggs Products, Inc.,* 84 N.C.App. 1, 10–11, 351 S.E.2d 834, 840 (1987)).

Here, Plaintiff does not specifically identify the type of defamation claim she seeks in the Amended Complaint. (*See* Am. Compl. ¶¶ 27-30.) In any event, the claim fails under any recognizable tort under North Carolina law for several reasons. First, while Plaintiff suggests in her deposition testimony that Crisco sent a letter to her pain management provider (*see* Douglas Dep. at 154:19-21, Docket Entry 37-2), no such letter is present in the Court's record and Crisco denied sending any written communication. (Crisco Dep. at 83:5-84:10, Docket Entry 37-4.) Moreover, Nurse Abshire testified in her deposition that she had never seen a letter regarding Plaintiff's discharge from CVS. (*See* Abshire Dep. at 72:2-73:20, Docket Entry 37-3). Thus, the evidence is void of written statements to establish written libel claims. *RE Carroll Mgmt. Co. v. Dun & Bradstreet, Inc.*, 706 F. Supp. 3d 535, 539 (M.D.N.C. 2023) ("Libel is defamation in written form."), *aff'd,* No. 24-1342, 2025 WL 415743 (4th Cir. Feb. 6, 2025); *Clark v. Clark*, 2021-NCCOA-652, ¶ 50, 280 N.C. App. 384, 398, 867 S.E.2d 743, 754 ("It is an elementary principle of law that there can be no libel without a publication of the defamatory matter.") (quoting *Satterfield v. McLellan Stores Co.*, 215 N.C. 582, 584, 2 S.E.2d 709, 711 (1939)).

Plaintiff's response to Defendants' summary judgment motion suggests that her defamation claim is a claim for slander *per se* or slander *per quod.* (Docket Entry 39 at 13-14.) The statements at the center of Plaintiff's defamation claim are Crisco's alleged verbal statements to the police and Plaintiff's pain management provider that Crisco was "assaulted" by Plaintiff's "husband" despite him not being present on the scene. (*See* Douglas Dep. at

13

155:2-6, 10-13, Docket Entry 37-2.) Plaintiff's deposition testimony that Crisco said he was "assaulted" is inadmissible hearsay that cannot sustain Plaintiff's claim. Plaintiff admits never hearing Crisco make the statement and Crisco denies making any statement about being assaulted when speaking to law enforcement. (*See* Douglas Dep. at 155:7-9, Docket Entry 37-2; Crisco Dep. at 81:11-17, Docket Entry 37-4.) Thus, Plaintiff's attempt to use inadmissible hearsay in support of her defamation claim is improper. *See Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."); *Bronitsky v. Bladen Healthcare, LLC*, No. 7:12-CV-147-BO, 2013 WL 5327447, at *2 (E.D.N.C. Sept. 20, 2013) ("Plaintiff only cites his own testimony that Dr. Block told him that Highsmith told Dr. Block certain things about plaintiff. This is plainly inadmissible hearsay.").

Beyond that, even if it were admissible and the Court presumes that the alleged statements were made and concern Plaintiff, the simple reference to "assault" is not a crime of moral turpitude to support a slander *per se* claim. *See Richardson v. Mancil*, 208 N.C. App. 569, 706 S.E.2d 843 (2010) ("[T]he crime of simple assault, in and of itself, still does not rise to the level of an infamous crime or a crime involving moral turpitude."); *Sorensson v. Dollar Gen. Corp.*, No. 4:23-CV-11-FL-BM, 2024 WL 3898339, at *12 (E.D.N.C. June 10, 2024) ("[S]imple assault is not a crime of moral turpitude in North Carolina."), *recommendation rejected on other grounds*, No. 4:23-CV-11-FL, 2024 WL 3894045 (E.D.N.C. Aug. 20, 2024).

Moreover, Plaintiff fails to forecast evidence of either the injurious character of Crisco's alleged words or special damages. *Izydore*, 242 N.C. App. at 445, 775 S.E.2d at 349. "In a defamation action, special damage means pecuniary loss." *Teague v. Time Warner Ent. Co.,*

14

*L.P.*, No. 5:98-CV-433-BR2, 1999 WL 1939985, at *3 (E.D.N.C. Mar. 29, 1999). "Emotional distress and humiliation alone are not enough to support a claim actionable *per quod.*" *Tallent v. Blake*, 57 N.C. App. 249, 254, 291 S.E.2d 336, 340 (1982). To the extent Plaintiff attributes any lengthy delay in receiving her pain medicine to Crisco's conduct (*see* Docket Entry 38 at 9; Docket Entry 42 at 2), the record reflects that Crisco notified Plaintiff's pain management provider after his encounter with Wilson to inform them that he was not fulfilling the prescription to comply with his obligations under the law so Plaintiff could obtain the medicine from another pharmacy. (Crisco Dep. at 82:2-6, 83:22-84:10, Docket Entry 37-4; Abshire Dep. at 74:19-75:16, Docket Entry 37-3; *see also* Ex. 3 to Pl. Dep., Docket Entry 37-2 at 101-02.) Thus, because Plaintiff has not shown any suffering of special damages, Defendants are entitled to summary judgment on Plaintiff's defamation claim.

Finally, to the extent that Plaintiff claims she was defamed by statements made by Crisco that she is a "drughead" and "rude" (*see* Douglas Dep. at 153:6-20, 154:2-6), her defamation claim still fails. Any statements Crisco may have made to Plaintiff fail for lack of publication to a third-party. *Craven v. Cope*, 188 N.C. App. 814, 817, 656 S.E.2d 729, 732 (2008) ("To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed"). Moreover, to the extent Plaintiff claims that the statements were made to law enforcement (*see* Douglas Dep. at 117:20-23, 148:18-19, 171:15-18) the evidence in the record to support such argument is Plaintiff's words, which is inadmissible hearsay testimony. Indeed, Officer Revels's body camera footage shows that it was Plaintiff using the term "drughead." (Video Footage Timestamp 11:04-07.)

For all these reasons, Defendants' motion for summary judgment will be granted as to Plaintiff's defamation claim.

### 3. Tortious Interference with a Contractual Relationship

Defendants also move for summary judgment on Plaintiff's claim for intentional interference with a contractual relationship. (Docket Entry 37 at 19-20.) Plaintiff alleges that she was in a contractual relationship with her pain management provider which Crisco knew about, and Crisco intentionally communicated false information to the provider solely to, and which did, terminate the contractual relationship with Plaintiff. (Am. Compl. ¶¶ 32-35.)

Defendants argues that (1) there is no evidence of a contract "that confers a contractual right against a third person"; (2) "there is no record evidence that Defendants had knowledge of the existence of a contract between Plaintiff and her pain management provider *or* that Crisco intentionally induced the pain management provider not to perform on the purported contract with Plaintiff"; and (3) "Plaintiff offers no evidence to show that Crisco was not justified in taking the actions Plaintiff alleges and Plaintiff suffered no damages as a result of Crisco's actions in any event." (Docket Entry 37 at 19-20.)

Plaintiff opposes by arguing that "Defendant Kyle Crisco was not required to share the reason behind his ending the prescription" only that it had been cancelled since "Plaintiff was not abusing the medication, nor using it for public marketplace, illicitly." (Docket Entry 39 at 15.) Plaintiff further argues that Crisco should have known that "providing information about threats" would result in termination of her contractual relationship with her pain management provider. (*Id.*)

To establish a claim for tortious interference with a contract, a party must show:

16

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*White v. Cross Sales & Eng'g Co.,* 177 N.C. App. 765, 768-69, 629 S.E.2d 898, 901 (2006) (citing *United Labs., Inc. v. Kuykendall,* 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). The determination of whether an actor's conduct is justified depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." *Peoples Sec. Life Ins. Co. v. Hooks,* 322 N.C. 216, 220–21, 367 S.E.2d 647, 650 (1988).

"A defendant may encourage the termination of a contract if he does so for a reason reasonably related to a legitimate business interest." *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.,* 160 N.C. App. 520, 523, 586 S.E.2d 507, 510 (2003) (internal quotation marks omitted). "If an outsider to the contract has sufficient lawful reason for inducing the breach of contract, he is exempt from any liability [for tortious interference with contract], no matter how malicious in actuality his conduct may be." *Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC,* 116 F. Supp. 3d 644, 661 (M.D.N.C. 2015) (quoting *Robinson, Bradshaw & Hinson, P.A. v. Smith,* 129 N.C.App. 305, 318, 498 S.E.2d 841, 851 (1998), *aff'd sub nom. Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC,* 845 F.3d 104 (4th Cir. 2016); *see also Georgia Pac. Consumer Prods., LP v. Von Drehle Corp.,* 618 F.3d 441, 456 (4th Cir. 2010) (quotation omitted) ("A malicious motive makes a bad act worse, but it cannot make that

17

wrong which, in its own essence, is lawful."). "In order to demonstrate the element of acting without justification, the action must indicate 'no motive for interference other than malice.' " *Area Landscaping, L.L.C.,* 160 N.C.App. at 523, 586 S.E.2d at 510 (quoting *Filmar Racing, Inc. v. Stewart,* 141 N.C.App. 668, 674, 541 S.E.2d 733, 738 (2001)).

Here, Plaintiff first fails to forecast evidence of a valid contract between her and her pain management provider that confers a contractual right against a third person. Plaintiff testified that she signed a contract with Integrated Pain Solutions (Douglas Dep. at 160:19-23, Docket Entry 37-2), but no contract has been placed in the Court's record and even crediting her testimony, there is no evidence demonstrating that said contract confers a contractual right against a third person. *See Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC,* 368 N.C. 693, 701, 784 S.E.2d 457, 462 (2016) ("[t]he evidence does not establish any legal obligation of a third-party . . .").

Even if a valid contract between Plaintiff and her pain management provider existed conferring upon Plaintiff a contractual right against a third person, Plaintiff claim fails on the remaining second, third, fourth, and fifth prongs. No evidence beyond speculation has been presented demonstrating that Crisco knew of the contract, intentionally induced Plaintiff's pain management provider to terminate the contract and was thus acting without justification. *See Penley v. McDowell Cnty. Bd. of Educ.,* No. 114CV00170MOCDLH, 2016 WL 4435695, at *9 (W.D.N.C. Aug. 19, 2016) ("Here, even assuming that Plaintiff had set forth any argument on this claim, it apparently fails on the third, fourth, and fifth prongs, as no evidence beyond speculation has been presented demonstrating . . . intentional[ ] induce[ment]."), *aff'd*, 876 F.3d 646 (4th Cir. 2017). Plaintiff only speculates that Crisco was aware of the contract. (*See*

Douglas Dep. at 161:13-162:10, Docket Entry 37-2.)  Moreover, Crisco testified that North Carolina law required him to advise the pain management provider that he canceled Plaintiff's Nucynta prescription (Crisco Dep. at 83:22-24, Docket Entry 37-4), demonstrating justification for his actions.  *See Fitzgerald v. Wolf*, 40 N.C. App. 197, 200, 252 S.E.2d 523, 524 (1979) ("A person is justified in inducing the termination of a contract of a third party if he does so for a reason reasonably related to a legitimate business interest.").

Plaintiff argues that Crisco "was not required to share the reason behind his ending the prescription" only that it was in fact cancelled.  (Docket Entry 39 at 15.)  However, Plaintiff fails to show how Crisco's decision to share the reason for his cancellation of the prescription amounted to him acting without justification.   For these reasons, Plaintiff has not established any genuine issue of material fact as to her claim for intentional interference with a contractual relationship and Defendants are entitled to summary judgment on this claim.

### 4. Abuse of Process

Defendants also move for summary judgment on Plaintiff's claim for abuse of process. (Docket Entry 37 at 21-22.)   Plaintiff alleges that Crisco contacted the police only to "embarrass, and harass" her, and the police "left CVS without report or incident because there was not an incident to report."  (Am. Compl. ¶¶ 41-42.)

Defendants argue that there was no legal proceeding initiated against Plaintiff on behalf of Defendants, and even if there is some proceeding, there is no evidence that Defendants used the proceeding for an improper purpose.  (Docket Entry 37 at 21-22.)  Plaintiff opposes by arguing that Crisco contacted the police, not because he was threatened, but "because of vibrato and to 'show upmanship' " as Wilson told him to do it.  (Docket Entry 39 at 17.)

Plaintiff further contends that "[t]he call was the previous act and collateral purpose was the embarrassment, and perhaps physical harm of the Plaintiff." (*Id.*)

Under North Carolina state law, "[a]buse of process is the misapplication of civil or criminal process to accomplish some purpose not warranted or commanded by the process." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007). "Two elements must be proved to find abuse of process: (1) that the defendant had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and (2) that the defendant committed some act that is a 'malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ.' " *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 210, 794 S.E.2d 898, 905 (2016) (quoting *Pinewood Homes, Inc.*, 184 N.C. App. at 602, 646 S.E.2d at 831). "The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by the defendant or used by him to achieve a collateral purpose not within the intended scope of the process used." *Hewes v. Wolfe and Hewes v. Johnston*, 74 N.C. App. 610, 614, 330 S.E.2d 16, 19 (1985) (citations omitted).

Here, even if Plaintiff could establish some proceeding that Defendants initiated against her, for example the calling of law enforcement, she has produced no evidence that Crisco had an ulterior motive, gained some advantage or benefitted from calling law enforcement, or that Crisco engaged in conduct that constitutes "malicious misuse or application" of any legal processes *after* law enforcement arrived at CVS. *Moch*, 251 N.C. App. at 210, 794 S.E.2d at 905. "Abuse of process requires the misuse of legal process for an ulterior motive." *Silver v. Sears, Roebuck & Co.*, No. 5:98CV984-BO(3), 2000 WL 33682675, at

*3 (E.D.N.C. July 31, 2000). "The second element of [an] abuse of process claim requires [the plaintiff] to demonstrate 'that once the prior proceeding was initiated, *the defendant committed some wilful act* whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.' " *M.D. Russell Constr., Inc. v. Consol. Staffing, Inc.*, No. 7:19-CV-221-BO, 2022 WL 875993, at *10 (E.D.N.C. Mar. 23, 2022) (citation omitted) (emphasis in original), *aff'd*, No. 22-1420, 2023 WL 8798086 (4th Cir. Dec. 20, 2023).

In her deposition, while hearing Crisco say that he would call the police, Plaintiff admits her lack of knowledge and motive as to why the call was made. (*See* Douglas Dep. at 163:22-164:16, Docket Entry 37-2). Plaintiff's position for Crisco calling the police—"because of vibrato and to 'show upmanship' "— (Docket Entry 39 at 17) is unsubstantiated. She argues that Crisco only called law enforcement because Wilson "literally told" Crisco to call them. (Crisco Dep. at 81:6, Docket Entry 37-4.) Even if that were sufficient to establish the basis of some ulterior motive on the part of Crisco, Plaintiff has failed to point to any wilful act *after* Crisco's calling of law enforcement to accomplish some purpose or gainful advantage.' " *Moch,* 251 N.C. App. at 210, 794 S.E.2d at 905; *M.D. Russell Constr.*, 2022 WL 875993, at *10. Moreover, in opposition to Defendants' motion, Plaintiff fails to cite any evidence which creates a genuine issue of fact on this issue.[9] Accordingly, the Court determines that Defendants are entitled to summary judgment on this claim.

---

[9] Like several of her other claims, Plaintiff generally references allegations in her Complaint related to her abuse of process claim in her surreply and state that "[e]ach of these claims is supported by deposition testimony, video footage, and other admissible evidence." (Docket Entry 42 at 3.) "[A] party opposing summary judgment may not simply rest on the allegations of h[er] complaint, but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food Inc.*, 108 F. App'x 757, 764 (4th Cir. 2004).

## 5. Discriminatory Denial of Service

Defendants next move for summary judgment on Plaintiff's discrimination claim. (Docket Entry 37 at 22-27.) Plaintiff alleges that as a black woman, she is in a protected class of race and gender, and Crisco's actions were done "as a result of her position in this protected class." (Am. Compl. ¶¶ 40-41.)

Defendants argue that "Plaintiff's 42 U.S.C. § 2000a ("Title II") and/or 42 U.S.C. § 1981 . . . claim fails . . . because . . . Title II does not apply to CVS and there is no forecast of evidence to show that CVS or Crisco did not sell her the unauthorized narcotic Nucynta because of her race." (Docket Entry 37 at 22-23.) In her response, Plaintiff argues that she has appropriately pled and forecast evidence of a discrimination claim under Title III of the Americans with Disability Act of 1990 ("ADA"). (*See* Docket Entry 39 at 17-19; Docket Entry 42 at 3-4.)

At the outset, Plaintiff has failed to respond to Defendants' argument as it relates to her race-based discriminatory denial of service claim. (*See generally id*.) "When a court finds the plaintiff has abandoned a claim, the court may grant summary judgment on the abandoned claim." *Palazzo v. Bayview Loan Servicing LLC*, No. CV DLB-20-2392, 2024 WL 4361857, at *15 (D. Md. Sept. 30, 2024) (collecting cases). Thus, to the extent Plaintiff raises race-based discrimination claims, summary judgment is appropriate in favor of Defendants. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Kirson*, 525 F. Supp. 3d 628, 634 (D. Md. 2021) ("In their briefs in opposition to the Motions, Defendants fail to oppose [the plaintiff's] Motion on this issue and thus have conceded the point."); *Lewis v. Durham Wellness & Fitness Sports Clubs, Inc.*, No. 1:17CV217, 2019 WL 718548, at *3 (M.D.N.C. Feb. 20, 2019) ("In the face of Defendants'

arguments and supporting evidence in the brief in support of summary judgment, Plaintiff's failure to argue said claims is tantamount to abandonment of the claims."), *report and recommendation adopted sub nom. Lewis v. Durham Wellness & Fitness*, No. 1:17-CV-217, 2019 WL 1573675 (M.D.N.C. Apr. 11, 2019); *Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue." (collecting cases)); *Waller v. Sprint Mid Atl. Telecom*, 77 F. Supp. 2d 716, 717 n.1 (E.D.N.C. 1999) ("[Plaintiff's] complaint also alleged a violation of 42 U.S.C. § 1981, however he appears to have abandoned this claim by failing to address it in his response to Sprint's motion for summary judgment.").

Beyond that, Defendants are entitled to summary judgment to the extent that Plaintiff asserts a claim under Title III of the ADA. First, Plaintiff has not properly pled any such claim. Plaintiff's allegations under her claim for discrimination (Count V of the Amended Complaint), cannot be construed as giving Defendants' notice that said claim was solely grounded in discrimination on the basis of disability under Title III of the ADA. (*See* Am. Compl. ¶¶ 45-48.) Thus, "Plaintiff's [ADA] argument, presented for the first time in her response brief at the summary judgment stage, is not properly before the Court." *Robinson v. Bowser*, No. 1:12CV301, 2013 WL 5655434, at *4 (M.D.N.C. Oct. 16, 2013); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing[.]"); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D. Md. 2006) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

Plaintiff points to her allegations that Crisco's conduct was "not based on any personal knowledge or actions of plaintiff directly," but rather her identity as "a Black, disabled woman." (*See* Am. Compl. ¶ 17.) Even if this meets the plausibility standard to assert a Title III ADA claim, Plaintiff's claim nevertheless fails on the merits.[10] Title III of the ADA provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C.A. § 12182(a). "To prevail under Title III of the ADA, a plaintiff must show that: (1) [s]he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against [her] because of [her] disability." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 669-70 (4th Cir. 2019).

"One is within the ADA's protected class if one is 'a qualified individual with a disability.' " *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001) (citation omitted)). The ADA defines "disability" as the following: "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Peeples v. Coastal*

---

[10] In asserting a Title III ADA claim, Plaintiff does not advance a separate claim of discrimination solely based upon her gender. (*See* Docket Entry 39 at 17-19; Docket Entry 42 at 3-4).

In addition, the Court notes that Defendants also raise the issue of standing. (*See* Docket Entry 41 at 7-8.) Assuming arguendo that Plaintiff has standing in order to sustain a Title III ADA claim, her claim fails on the merits for the reasons addressed herein.

*Office Prod.*, Inc., 203 F. Supp. 2d 432, 458 (D. Md. 2002) (citing 42 U.S.C. § 12102(1), *aff'd*, 64 F. App'x 860 (4th Cir. 2003)). The question of whether a plaintiff is disabled under the ADA, "and therefore can bring a claim under the statute, is a question of law for the court, not a question of fact for the jury." *Rose v. Home Depot U.S.A., Inc.*, 186 F.Supp.2d 595 (D.Md. 2002) (citing *Hooven–Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001)). In resolving this inquiry, a court must make "an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001)

Here, Plaintiff purports to establish her disability by pointing to the fact that she was taking a Scheduled II narcotic medication and was "in pain." (*See* Docket Entry 39 at 19 ("[Crisco] has issues with his customers who are receiving Class II medications. Those customers are, for the most part in pain and disabled as a result of the pain. [Plaintiff] fits within this category.").) "Of course, many people with chronic pain who need prescription opioid medication are disabled, as many courts have found." *Fuog v. CVS Pharmacy, Inc.*, No. CV 20-337 WES, 2021 WL 4355402, at *3 (D.R.I. Sept. 24, 2021) (collecting cases). However, not everyone that takes a Scheduled II narcotic medication nor everyone in "pain" is necessarily disabled under the ADA. *See id.* ("[N]ot all of those with *chronic* pain are disabled within the meaning of the ADA.")(emphasis added); *Danielle-DiSerafino v. Dist. Sch. Bd. of Collier Cnty., Fla.*, 756 F. App'x 940, 943 (11th Cir. 2018) ("Pain alone is insufficient to establish a disability if the evidence does not show impairment of a major life activity."); *Simpkins v. Specialty Envelope, Inc.*, 94 F.3d 645 (6th Cir. 1996) ("[M]erely because an individual is taking some medicine does not prove that the individual has a 'disability' for purposes of the ADA."). Here, Plaintiff does not articulate how her narcotic medication intake or pain "substantially

25

limits" her ability to perform any "major life activities," which is a required showing under the ADA. *See A Helping Hand, LLC v. Baltimore Cnty., MD*, 515 F.3d 356, 367 (4th Cir. 2008) ("Major life activities" "refer[ ] to those activities that are of central importance to daily life." (citation omitted)); *see also Boyd v. City of New York Parks & Recreation*, No. 05 CIV. 6962 KMW THK, 2008 WL 5092841, at *7 (S.D.N.Y. Dec. 2, 2008) ("Plaintiff's only specific argument is that he lives with pain as a result of his surgeries and appears to argue that his pain constitutes a disability. Pain, however, in and of itself, does not qualify as disability under the ADA.") And even if the record reveals that Plaintiff has an impairment, "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002).

Neither does Plaintiff argue nor advance any theory that she was disabled under the remaining subsections of the ADA's definition of a disability. *See Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 152-53 (4th Cir. 2012) ("having 'a record of' a physical impairment that substantially limits one or more major life activities[,]" or " 'regarded as' having a physical impairment that substantially limited one or more major life activities").[11] In sum, because

---

[11] As further explained,

> An individual has a "record of a disability" where that individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 U.S.C. § 1630.2(k)(1). An individual may be "regarded as" disabled when: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."

*Munday v. Lees-McRae Coll.*, No. 1:20-CV-00105-MR-WCM, 2022 WL 17252598, at *8 (W.D.N.C. Nov. 28, 2022) (citation omitted).

Plaintiff fails to point to specific evidence in the record to establish that she was disabled under the ADA, her prima facie case of discrimination under the ADA fails, and Defendants are entitled to summary judgment on her ADA discrimination claim.

Even assuming Plaintiff qualifies as disabled under the ADA, Title III requires a place of public accommodation "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities[.]" 42 U.S.C. § 12182(b)(2)(A)(ii). Plaintiff relies on *Callum*, which set forth recovery under the ADA in a retail space:

> "To recover under section 12182(b)(2)(A)(ii) in a retail sale case, a plaintiff must show that he comes within the protections of the ADA as a person with a disability and that the defendant's establishment is subject to the mandates of Title III as a place of public accommodation." *Dudley v. Hannaford Bros. Co.,* 333 F.3d 299, 307 (1st Cir. 2003) (internal citation omitted). The plaintiff must also show four additional requirements, including

> > that the defendant has a discriminatory policy or practice in effect; that he (the plaintiff) requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods; that the requested modification—or a modification like it— was necessary to afford that access; and that the defendant nonetheless refused to modify the policy or practice.

> *Id.* (citing *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 683 n. 38, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001)).

*Callum*, 137 F. Supp. 3d at 840.

Here, there is no evidence of a discriminatory policy or practice in effect at CVS preventing patients from filling their necessary prescriptions on the basis that they were prescribed Scheduled II narcotic medications and/or who were in pain. Rather, Crisco testified that CVS filled a high volume of Scheduled II narcotic prescriptions during weekdays, estimating between 20 to 30 on average. (Crisco Dep. at 56:3-17, Docket Entry 39-1.) Moreover, while Plaintiff argues that "[s]he requested a simple accommodation of letting her know when she could be able to pick up her medications[,]" (Docket Entry 39 at 19), she fails to allege, much less point to evidence in the record of such a request, nor a refusal by Defendants to modify any policy or practice to grant her the requested modification. *See Gastelum v. TJX Companies, Inc.*, No. CV 23-8905-JFW(AJRX), 2024 WL 2842195, at *5 (C.D. Cal. June 4, 2024) ("[A] plaintiff alleging discrimination under Title III of the ADA based on a defendant's purported failure to modify policies, practices, and procedures must allege that the defendant failed to make a requested reasonable modification to a discriminatory policy or practice that was necessary to accommodate the plaintiff's disability."), *appeal dismissed,* No. 24-4155, 2025 WL 1894826 (9th Cir. Apr. 3, 2025). Nor has Plaintiff explained how this requested modification relates to the purported discriminatory policy or practice in effect at CVS preventing patients from filling their necessary prescriptions on the basis that they were prescribed CII narcotic medications and/or who were in pain. For these reasons, Defendants' motion for summary judgment as to Plaintiff's discrimination claim is granted.

### 6. Negligent Retention and Supervision

Defendants lastly move for summary judgment on Plaintiff's claim for negligent retention and supervision. (Docket Entry 37 at 27-30.) Plaintiff alleges that CVS "acted with

less than reasonable care" as it knew or should have known of Crisco's discriminatory actions, failed to address or terminate its relationship with Crisco, and CVS knew or should have known that terminating its relationship with Crisco was necessary to prevent Plaintiff's injury. (Am. Compl. ¶ 44.)

Defendants argue that failure to sustain one of the underlying common law tort claims warrants dismissal of Plaintiff's claim for negligent retention and supervision. (Docket Entry 37 at 28.) They further contend that Plaintiff has not established that CVS has acted negligently. (*Id.* at 28-30.) Plaintiff opposes by arguing that Crisco received several complaints, "some of which [CVS] informed him directly and others he learned about online." (Docket Entry 39 at 21.) Plaintiff further contends that CVS's customer care received complaints and CVS "was aware or should have been aware of issues that [Crisco] was having with customers[,]" especially his behavior towards "CII customers." (*Id.* at 21-22)

"North Carolina recognizes a cause of action for negligent supervision and retention as an independent tort based on the employer's liability to third parties." *Smith v. Privette*, 128 N.C. App. 490, 494, 495 S.E.2d 395, 398 (1998) (citation omitted). For this claim, Plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Id.*, 128 N.C. App. at 494-95, 495 S.E.2d at 398; *accord Smith v. First Union Nat'l Bank*, 202 F.3d 234, 249-50 (4th Cir. 2000); *Medlin v. Bass*, 327 N.C. 587, 590-91, 398 S.E.2d 460, 462 (1990) (citation omitted). "An essential element of a claim for negligent retention of an employee is that the employee committed a tortious act resulting in plaintiffs' injuries." *Waddle v. Sparks*, 331 N.C. 73, 87, 414 S.E.2d 22, 29 (1992). "In other

words, North Carolina courts will not hold an employer vicariously liable unless an employee has committed a cognizable wrong against the plaintiff." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 774 (4th Cir. 1997).

As a threshold matter, Plaintiff's failure to sustain one of her underlying torts' claims beyond summary judgment warrants dismissal of her claim for negligent retention and supervision. *See Bond v. Rexel, Inc.*, No. 5:09-CV-122, 2011 WL 1578502, at *9 (W.D.N.C. Apr. 26, 2011) ("When underlying torts that form the basis of Plaintiff's negligent supervision claim fail as a matter of law, then one of the *prima facie* elements of negligent supervision also fails."); *Kimes v. Lab'y Corp. of Am.*, 313 F. Supp. 2d 555, 569 (M.D.N.C. 2004) ("Since Plaintiff has not demonstrated any evidence to support [her underlying tort] claims, she has likewise failed to demonstrate any tortious conduct, an essential element of this claim."); *Guthrie v. Conroy*, 152 N.C. App. 15, 26, 567 S.E.2d 403, 411 (2002) ("[T]he trial court's grant of summary judgment on plaintiff's NIED and IIED claims against [the defendant co-employee] precludes defendant [employer's] liability for negligence in supervising and retaining [the defendant co-employee] in regard to those claims."). Accordingly, summary judgment in Defendants' favor on this claim is appropriate.[12]

---

[12] In another decision, this Court held that "Title VII and ADA claims cannot serve as the underlying torts for [the p]laintiff's negligent hiring, supervision, or retention claims." *Bockman v. T & B Concepts of Carrboro, LLC*, No. 1:19CV622, 2020 WL 5821169, at *26 (M.D.N.C. Sept. 30, 2020); *see also Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 707-08 (W.D.N.C. 2009) (discussing *McLean v. Patten Communities, Inc.*, 332 F.3d 714 (4th Cir. 2003)). Even if they could form the basis for Plaintiff's negligent supervision and retention claim, "the Court has determined that defendants are entitled to summary judgment on [P]laintiff's Title VII[ ADA claim], and thus they cannot serve as the tortious acts required for plaintiff's negligent retention and supervision claim[.]" *White v. White*, No. 5:19-CV-467-BO, 2021 WL 5810503, at *12 (E.D.N.C. Dec. 7, 2021), *aff'd sub nom. White v. Vance Cnty. Sheriff*, No. 21-2424, 2023 WL 2263018 (4th Cir. Feb. 28, 2023).

Moreover, to the extent Plaintiff seeks liability for each of her aforementioned state law claims against CVS based upon an agency relationship with Crisco (*see* Am. Compl. ¶¶ 25-26, 29, 37, 43), such claims fail as a matter of law against CVS. CVS's liability is premised on the actions of Crisco as its employee and agent. (*See id.*) Under North Carolina law,

> An employer (or principal) is liable for an intentional tort committed by its employee (or agent) only '(1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment and in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal."

*McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 615 (M.D.N.C. 2019) (quoting *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 491, 340 S.E.2d 116, 121 (1986)). "Intentional torts generally are not considered to be within the scope of employment." *Wilson v. Gaston Cnty., NC*, 145 F. Supp. 3d 549, 559 (W.D.N.C. 2015), *aff'd*, 685 F. App'x 193 (4th Cir. 2017). In any event, [u]nder a theory of *respondeat superior,* the principal's liability is derivative, arising from the acts of the agent [and] where the agent has no liability, there is nothing from which to derive the principal's liability under the doctrine." *Cameron Hosp., Inc. v. Cline Design Assocs., PA*, 223 N.C. App. 223, 226, 735 S.E.2d 348, 351 (2012); *see also B.C. v. Palmetto Wellness Grp. NC, LLC*, 918 S.E.2d 663, 670 (N.C. Ct. App. 2025) ("The principle's liability is not based on any fault of its own; instead[,] the principle's liability is derivative, based on the agency relationship between the principle and its tortious agent.").

Here, the Court need not determine whether liability extends to CVS under principles of *respondeat superior* as no liability has been found against Crisco in the first instance. Accordingly, to the extent Plaintiff's claims for IIED, defamation, tortious interference with

31

a contractual relationship, and abuse of process are asserted against CVS based upon an agency theory, they fail. *See Murrill v. Choice Hotels Int'l, Inc.*, 383 F. Supp. 3d 594, 599 (E.D.N.C. 2019) ("Where plaintiff lacks a claim of negligence against her employer, the alleged agent and franchisee, she cannot impute a negligence claim onto defendant based upon an agency theory of liability."); *Davis v. Durham City Sch.*, 91 N.C. App. 520, 522, 372 S.E.2d 318, 320 (1988) (citation omitted) ("Defendant cannot be held liable for the acts of its employee when there is no basis for the employee's liability.").

## V. CONCLUSION

For the foregoing reasons, the record evidence (viewed in the light most favorable to Plaintiff) demonstrates that there is no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law as to Counts I, II, III, IV, V, and VI of Plaintiff's Complaint. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment as to All Claims in Plaintiff's Complaint (Docket Entry 36) is **GRANTED IN PART** such that Counts I, II, III, IV, V, and VI of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**, and **DENIED IN PART** such that Count VII of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.[13]

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

---

[13] Count VII of Plaintiff's Complaint is dismissed without prejudice in light of the Stipulation of Voluntary Dismissal. (Docket Entry 34.)

**SO ORDERED**.  This the <u>10th</u> day of October, 2025.


_____
      /s/  Joe L. Webster
    United States Magistrate Judge